Case number 22-1222, People v. Antoine Reynolds. Thank you. Welcome, everybody. Would the lawyers who are going to argue this case each stand and tell us your first and last names and spell your names if you think it's necessary, beginning with the appellant. Good morning. My name is Adrienne Sloan. I'm with the Office of the State Appellant. Good morning. Assistant State's Attorney Sarah McGann on behalf of the people of the state of Illinois. Okay. All right. Before we begin, I just want to introduce ourselves to the audience. If you can't see our name plates from the back, I'm Justice Mikva. I will let my colleague introduce herself. I'm Justice Fredrina Lyle. And I'm Justice David Navarro. Welcome, everybody. We will have 20 minutes aside with five minutes for the appellant for rebuttal. We're going to be, as we always are, a little liberal if necessary with the time. I'd like you to take a little extra time than you might ordinarily to explain the facts of the case to the audience, some of whom have not read the briefs. We have, of course, all read the briefs. So beginning with the appellant, whenever you're ready. Okay. Good morning, Your Honors. May it please the court. Again, my name is Adrienne Sloan. I'm an attorney with the Office of the State Appellate Defender, and my client is Antoine Reynolds. Eyewitness identifications are not as reliable as the average juror believes them to be. After the Illinois Supreme Court decision in People v. Lerma, this is a well-settled scientific fact, widely accepted by our courts. And this is especially true in the circumstances of Mr. Reynolds' case. Eyewitness identifications are not reliable where there is a weapon present, where the event is stressful, where a long time has passed between the event and the identification made, and where police procedures are suggested. Again, this is widely agreed upon by experts in the field. And expert testimony about the inaccuracy of eyewitness identifications has been repeatedly accepted by our courts. For his first stage post-conviction petition to advance, Antoine Reynolds must only show that it is arguable, that if an expert were presented at his trial to testify to this science, that the outcome of his trial may have been different. As this was an extremely close case substantiated only by eyewitness identifications, Mr. Reynolds has satisfied this standard. This court has addressed this issue almost directly in the case of People v. Hayes. In Hayes, as here, the defendant claimed that trial counsel was arguably ineffective for failing to introduce expert testimony regarding witness identification. This court agreed, reasoning that it was at least arguable that expert testimony would have undermined the witness's identification of the defendant. Here, as in Hayes, if the jury had heard that eyewitness identifications are not as reliable as it might seem, especially with facts similar to those in Mr. Reynolds' case, it's arguable that the outcome of Reynolds' trial would have been different. Ms. Sloan, at least one of the witnesses knew or claimed to have known the defendant in this case, right? That's correct, Mr. Butler. And, in fact, identified him later, as you said, years later, identifies him by name. Your Honor, he identified Mr. Reynolds as an acquaintance of Mr. Boyce, who was identified as the shooter. And identifies him by name? Well, he calls him Antonio, and my client's name is actually Antoine. That said, People v. Lerma does address this. And the expert in Lerma explained that even with acquaintance identifications, the fact still remains that the science shows that they're not as reliable as the average juror would seem for them to be. Actually, in People v. Lerma, it explains that where the situation fosters a witness's expectation that he will see the acquaintance, that can actually make the identification even less reliable. So as here, Mr. Butler stated that he knew of Mr. Reynolds. He called him Antonio, and his name is Antoine. He stated that he knew of him only through Boyce. So what that shows, as the Lerma expert explained, is that the situation would more expect him to think about Boyce and Mr. Reynolds together, whether that was true or not. So the science applies whether the person is an acquaintance of the witness or if it's unknown, like in the case of Mr. Garrett. So if it applies whether the person identified is an acquaintance, what is the limit on your argument? Where does it not apply? Where is it not ineffective assistance, at least enough to get past the first stage, to not call an expert? Are there any cases where eyewitness identification is important? So particularly here, it's especially important because, again, there are no forensics. There's no inculpatory statement by Mr. Reynolds. This case is substantiated only by the two eyewitness identifications. So certainly in a case like this one, had an expert testified and told the jurors that eyewitnesses are not as reliable as one might seem, especially in this circumstance, that would have been relevant. That would have at least arguably tipped the scales in favor of conviction. As opposed to Lerma, where the witness, at least the one witness that IDs the defendant, says, really, in the grand jury, I didn't know him, right? That's true. And that, again, that's true of the witness, Mr. Garrett. He did not know the person, and he identified him. He said he'd known him for, not Garrett, but the other witness had known him for two years. Butler said he knew him as an acquaintance. He wasn't his friend, but he had spoken to him. For two years. Yes. It's a very casual acquaintance. He didn't even know his actual first name. And again, not to harp on this, but in Lerma, it states where the situation fosters the witness's expectations that he will see the acquaintance, that's an indication that the eyewitness identification can be less reliable. But in Lerma, she's seen him across the street. She knows him from the neighborhood, knows him as Lucky. She knows him by the nickname and knows him from the block, right? Yeah. I would argue that a nickname is a little bit different than just plainly saying his first name incorrectly. And again, he did say, I believe repeatedly, that he knew him through Boyce only. Boyce was the person who was his friend for years and years, his whole life. And whenever he had seen Mr. Reynolds, it was through Mr. Boyce. So when he saw, when he was aware that Mr. Boyce was part of this crime, it can make it, science says that in his own mind, it makes it more likely to identify Mr. Reynolds with Mr. Boyce, even if that's not the case. That's why this science is important. Am I correct that the first identification was from the police officer pulling up a single photograph and saying, is this him? Is that correct? Yes, that's correct. And that was years after the offense. And that was, he was in custody and approached by police officers. Counsel? Yes. Would you just discuss the facts of the case, the fact that there was a shooting? Because in your briefs, you discuss how all of those issues are important in determining whether or not the expert would have something valid to say. So would you go back a little bit? Because as Justice McPher indicated, people in the room may not know what we're talking about. Of course, absolutely. So in this case, there were 12 to 15 people hanging around on a corner in Chicago when a Cadillac came up and someone shot out of the back seat of the car. At the time of the event, no one identified my client. Only years later, Mr. Butler and Mr. Garrett were approached by police officers. They didn't have an independent change of heart. They didn't decide to make identifications. They were approached by police officers when they had their own pending cases. And at that point, they did identify Mr. Reynolds, but it was under extremely suggestive circumstances. So I can go into specifically the problems with each witness, if that would be helpful. As for Mr. Butler, again, on the night of the incident, he was approached by officers and said he couldn't identify anyone. When he identified Mr. Reynolds two to three years later, he was in custody on his own pending case. And after he did so, he received a lenient sentence on his own serious gun case. On the stand, there were problems with Mr. Butler's credibility. One important point is that he had stated that he had not been drinking on the night of the offense. A toxicology report indicated that that was not the case. Which not only goes to his credibility and truthfulness, but the fact he had been drinking, was intoxicated on the night of the offense, would also diminish his ability to identify my client. All of which, all those issues were brought up by Reynolds' attorney at trial, and on cross-examination, to impeach or to impact his credibility when he was testifying, right? So those issues certainly were. I'm bringing this up to explain why this was such a close case. And because it's such a close case, that's why it's arguable that if the jury had learned other things, other things that are not intuitive to the average people, that are science about eyewitness identifications, it's arguable that the outcome of the trial would have been different. So they were aware of these facts. They weren't aware of things like in Lerma that, for example, an individual's level of certainty regarding his identification doesn't correlate to the accuracy of the identification. So what that means is that although Mr. Butler and Mr. Garrett came on to the witness stand and stated yes, I'm certain that it was Mr. Reynolds who I saw shooting. That level of certainty doesn't mean they're more correct than a reluctant witness. And that's not something that's intuitive. That's not something that the average juror would realize. And that's why it's important that this scientist would tell these scientific facts, these well-settled scientific facts to the jury. And at this stage, again, Mr. Reynolds only has to prove that it's arguable that if this had happened in this very close case, that the outcome of the trial would have been different. And can you just, following up on Justice Lyle's point and your last point, explain, because it's clear, I think, from the questions that he's already had a trial, explain where we are procedurally in this case. Of course. Yes. So Mr. Reynolds has already had a trial. He was convicted. His conviction was affirmed on direct appeal. He's now filed what's called a post-conviction petition. The post-conviction process is a way for criminal defendants to challenge the constitutionality of their sentence after their direct appeal. One very common way of challenging that constitutionality is by stating that one's attorney rendered constitutionally ineffective assistance of counsel. Now, here we're at the first stage. Mr. Reynolds filed this petition. He drafted this petition on his own, without me, without another attorney, while incarcerated. And that's why he have a low standard right now. That's why the standard is if Mr. Reynolds made the gist of a constitutional claim, if Mr. Reynolds could show that it was at least arguable that this could have changed the outcome of the trial, then he should advance to second stage. At second stage, the bar becomes higher. Right now, it's very low. And again, where this was an extremely, extremely close case, the jury deliberated for days. His guilt is substantiated only on these witnesses who have credibility problems. He did meet that threshold. If I can just go into now Witness Garrett. Some of the same problems with Butler are present with Mr. Garrett, arguably even more so. Again, he said repeatedly to officers that he did not see anyone on the night of the incident. He told officers, don't even show me a lineup because I cannot identify any of these individuals. He testified at a grand jury under oath that he did not see the rear seat shooter. And again, he identified Mr. Reynolds years later. And let me talk about those problems with both those witnesses. As opposed to the witnesses in Hayes, and I don't remember all the facts of the – there were six witnesses, I think, in Hayes. But these two witnesses, the problems with their identification, many of them didn't require expert testimony. The fact that it had been three years, the fact that he said in the grand jury, I don't know him. The fact that, you know, that he was shown a single picture. You don't really need an expert, do you, to explain to a jury that three years is a long time to go by and say, oh, yeah, I remember it was him. Perhaps not for that factor, but there are things that an expert could have added here. For example, what I explained about certainty not being correlated with accuracy. Another thing that the expert could have testified to that is not intuitive, that the average juror might not have understood, was the weapons focus factor. And what that means, the expert in Lerma explained that where there is a weapon present in the encounter, it's far more challenging for a witness to reliably identify the person who's holding the weapon. And the average person might think, wow, I'm looking at someone holding a gun. I'm very focused on the gun and the person. I can accurately identify the person. But what the science tells us is that that's not the case. This is not intuitive. The jurors would not realize this, that where there's a weapon focused, where there's a weapon present, the individual is focusing so strongly on the weapon, that it's harder for them to identify the person. These are scientific facts. These could have at least arguably added to the identification, added to the juror's information needed to make a decision and could have arguably tipped the scales in favor of conviction. So again, with Mr. Garrett, he said he did not see the people in the car. He testified at the grand jury. The lineup that he identified Mr. Reynolds in years later was very suggestive. Mr. Reynolds has face tattoos, and he was the only person in the lineup who did have those. He was also not given proper lineup admonishments, and there were police officers in the lineup. Mr. Garrett's an individual who had been arrested before. So he knows that part of entering police custody is taking off your watch, taking off your shoelace. The officers in this case had their shoelaces, had their jewelry. He knew that some of these people were police officers. It's making the pool of who he could have identified much smaller. All that was raised in the motion to suppress identification by the attorney, and then raised again at trial. Absolutely, Your Honor. And again, the reason I'm going into this is simply to explain that it's a very close case. And that's important because we need to know if Mr. Reynolds met the threshold that these experts could arguably have tipped the scales in favor of conviction. And again, the closeness of the case goes to that. The jurors had a very hard time making their decision here. Even the appellate court decision- But we're talking about ineffective assistance. There's no way the lawyer could know the jurors are going to have a hard time. They're going to be out and send back questions. That's an after-the-fact thing, and that's not what we're doing when we're talking about ineffective assistance, is it? Well, the attorney was aware that this conviction rested entirely on eyewitness identification. That's true. And the attorney argued in closing some of these problems. The lawyer knew that this was a close case, and there's no reason not to include this evidence. This evidence could only have helped. And again, at this point, he only has to prove that it's arguable that it would have helped. And we have a skeptical jury. We have a case that's entirely about eyewitness identifications. If we had an expert that said, look, even though these guys are certain, that doesn't mean they're more accurate. There was a gun present, which means they're less accurate. All of this could have tipped the scales in favor of acquittal, at least arguably. But if his trial strategy is, these are guys who've got cases that they're trading on, right? These are defendants. They're trading on cases, who've delayed reporting it, who've been impeached from their grand jury testimony. His theory, then, is these are witnesses who've got baggage, who've got things working against them. It's not witnesses who are making a misidentification. The theory that he's proceeding on, at least through the transcripts, is that these are witnesses who've got a bias or motive to lie. And under that theory, then, the expert and the reliability of witness identification doesn't really track with that theory. First of all, I would just point out that at this stage, Mr. Reynolds doesn't have to disprove trial strategy. Trial strategy is a point for later post-conviction proceedings. That said, he could have argued in the alternative. And it would not have hurt to argue in the alternative. Look, these people had motives to lie. But even if you believe them, they're not credible because of these scientific facts, along with not being credible because of their status as felons, their belated identification. They're just more factors to tell the jury that these were not good witnesses. And there's really no reason not to put on this evidence, especially where, after Lerma, it's well settled scientifically. This is not a case where the state can put on its own expert that says something competing. These are facts. These are widely accepted by our courts. They're widely accepted by courts all across the country. And they only could have helped Mr. Reynolds. And again, Mr. Reynolds doesn't have to disprove trial strategy at this point. Mr. Reynolds only has to show that this arguably could have changed the outcome of his trial. And your burden regarding the ineffective assistance of counsel, what does your client have to show at this stage? So my client has to show that counsel was arguably rendered deficient performance and that this was arguably prejudicial. So he just has to show that it's not completely against the record. It's not completely delusional. It's not fanciful that this could have changed the outcome of the trial. It's a very low standard right now. And this, again, this is a very close case. You have about two minutes left. Oh, yes, of course. Any points you didn't get to make, please make them. Yes. So just to briefly go to the science. Again, there was a large gun present that all the witnesses described, which makes identifying the person holding the gun more difficult. That's not intuitive. I've talked about the witness's level of certainty doesn't correlate to the accuracy. Really put simply here, Reynolds' jury was already worried about the identification evidence and about the fact that it was the only evidence being used to convict Mr. Reynolds. It's at least arguable that if this skeptical jury had been presented with an expert to explain even more scientifically proven problems with witness identification evidence, it could arguably have chosen to acquit. Butler's petition did present the well-pleaded allegation that his attorney was ineffective for failing to present expert testimony. And his petition should be remanded for second stage proceedings. Thank you. Thank you. Your honors, may it please the court. Your honors, this court should affirm the trial court's summary dismissal of petitioner's first stage petition where petitioner failed to state an arguable claim of ineffective assistance of trial and appellate counsels. As this court is well aware, under de novo review, this court may affirm for any reasons on the record. And the people submit that there are several. All three sub-issues relevant to this appeal were decided by a panel of this court in People v. Burke. And I would just like to step back a little bit with two preliminary issues here. First, petitioner has forfeited this issue where he could have raised the issue of ineffective assistance of trial counsel on direct appeal. But in order to present that issue, you have to show what an expert would have testified to and that couldn't have been presented on direct appeal. Your honor, in People v. Burke, the court acknowledged that simply the trial court's failure to present the expert was enough to present a claim on appeal under Strickland. So certainly, defendant chose to couch it now in an appellate claim, and that is where he has circumvented forfeiture. But I would just point out that in this case, the forfeiture rules would have been relaxed, and he could have brought it on direct appeal. Anyhow, as stated, he did circumvent- I did the direct, I wrote the direct appeal, and I can tell you that you can't present that claim without some outside the record facts about what this expert would have testified to. Certainly, your honor. So forfeiture aside, then moving towards another procedural issue, a procedural misstep, if you will. Petitioner also failed to meet the procedural requirements as required by section 122-2 of the Post-Conviction Hearing Act. Now this act is a statute, and it's designated to help incarcerated defendants bring forth these claims in the Post-Conviction Hearing Act. It requires an affidavit or other supporting evidence. When a petitioner files a petition at the first stage with those claims to support those claims, petitioner here only presented really conclusory, bald assertions based on Lerma in his petition. Again, we've relaxed that significantly, have we not, for people who are incarcerated. Because as I said, what's needed is an affidavit from an expert, and Mr. Reynolds is incarcerated. And I assume indigent, because he's represented by OSAD. So probably not in a position to collect an affidavit from an expert. Certainly, your honor. And I think in people, B Burke, they did address that, where the petitioner could have attached an affidavit explaining what type of expert testimony he would procure. And I would even argue from what type of named an expert, because we do have these people named in these cases, petitioner is able to pull all of this case law. And in regards to Lerma, certainly he could have attached something explaining more specifically how an eyewitness expert would analyze the facts of his case. And this is a petitioner that's incarcerated that is a pro se litigant, correct? Correct. And your honor, I would just point out again that the Post-Conviction Hearing Act was contemplated for defendants who are incarcerated. So there's nothing in the act that shows that there's an exception to this. But that said- Just in case we get to the merits, you will address this, right? Yes, yes. That alone, as Burke said, is fatal to a petition, and alone justifies summary dismissal. But yes, moving on to the merits of defendant's claim. Again, defendant presents these very general assertions based on Lerma here. And this case, Lerma, does not stand for the fact that just because counsel did not present an expert witness and eyewitness identification, that he is per se deficient. Lerma wasn't even about that. It was about the trial court making a mistake, not about lawyer doing anything wrong. Correct. Exactly. In Lerma, it was the trial court in abuse of discretion. So here, we do have an ineffective assistance of counsel claim. So the standard is a two-pronged standard set forth in Strickland, which requires proof of deficient performance and then also prejudice as a result of that deficient performance. In the post-conviction context, petitioner need only show arguable deficient performance and arguable prejudice. So I know this court has sort of reserved the first prong for second stage proceedings, but I do have- Well, the Supreme Court did that, actually. Yes, yes. So we have to follow that. We certainly do. That said, while the analysis for trial strategy may be better suited for second stage proceedings, Lerma's holding does not automatically obligate trial counsel to put forth an expert in eyewitness identification in every case. Involving such, because as revealed in this case, Ann and Burke, trial counsel's decision not to do so does not render him per se deficient. Where- The question was posed to your opposing counsel, when would they be required to put an expert forward? Give me an example of when they would need to. When, I think that if the defense is not sure about poking holes through cross-examination and   then perhaps they would bring in an expert witness. But your honor, as you pointed out, if you do bring in the expert witness, then the state certainly can bring in their own witness and then almost bolster the state's case and it could hurt the defendant's case. What would that expert testify to, potentially? Potentially, just more accuracy in the eyewitnesses' identifications. That would be more factors that are favorable to the eyewitnesses. Here we have defense counsel whose theory of the case was these are two convicted felons. They're incredible. They gave very delayed identifications throughout cross-examination and throughout the entire trial, defense counsel was testing these eyewitnesses. And he was able to- Counselor, the motion to suppress in this case, isn't it a fact that the defense counsel on the record said I'm going to have to get an expert witness as early as the motion, before we got to the trial? Right. Your honor, yes, following that motion, there was an exchange between the court and defense counsel. And defense counsel did indicate that he was going to explore the possibility of an expert witness. And then, he did not put forth an expert witness. But just because defense counsel did not put forth an expert witness, does not mean that he did not explore the possibility and decided that that was not going to work well with his trial strategy. So- And trial strategy comes up at phase two. Correct. But even trial strategy aside, petitioner cannot show an arguable claim of prejudice. How about a guilty finding? That's not prejudicial? Your honors, we had a jury here that was instructed with Illinois Pattern Jury Instruction 3.15, which lays out the factors that were established in Biggers, in Neal versus Biggers, 1972, by the United States Supreme Court. And those factors have been adopted by the Illinois Supreme Court. And that is the law of the land when it comes to a trier of fact, analyzing and weighing the eyewitness's testimony. So we have a jury who was in fact instructed on those factors. And this court, as this court knows, did analyze those factors on direct appeal. And while you can't really pit them up against the Lerma factors, they do show that the jury was convinced that these eyewitness identifications were reliable. Well, my question really went to the fact that you said you had to show some arguable prejudice. And clearly, being incarcerated could be considered to be prejudicial. That's all counsel, but move on to your next point. Well, Your Honor, I would just remind the court that petitioner offers no evidence that counsel failed to investigate an expert. Nor does he show that there was an expert who would have testified in accordance with his brief. Therefore, we're left with only speculation in his conclusory statements, which again, is not enough to show arguable prejudice as to the facts of this case. We have these bald, speculatory conclusions that simply do not suffice. So, I would just argue that defense counsel here did put forth this zealous defense. And in light of all the facts and circumstances here, decided against an expert witness. Because it would not align with his theory of the case. I would point out that the factors in Biggers, this court found that three of the five factors were in favor of the state. So, we do have Kenyatta and Michael Barnes. They corroborated Mr. Butler and Garrett's testimony about when the Cadillac pulled up. And we have Mr. Butler and Mr. Garrett both identifying the driver co-defendant and petitioner. Eventually, we have the witness's degree of attention. They both knew the victim here in this case. And they both saw and identified an assault weapon or a machine gun. So, they weren't necessarily engaged. As far as the degree of certainty with which the identifications were made. Again, as counsel addressed, Butler identified defendant by Antonio and stated that he knew him previously and identified him right away when the officer pulled up the photograph. Mr. Garrett identified the defendant in the lineup. Now, the jury considered all of those factors after hearing about all of the complaints that now petitioner puts forth. So, all of the holes were poked at by defense counsel in pointing out that there was such a delay in the identifications. That the lineups may have been suggestive that these were defendants who were convicted felons. So, all of this was brought forward and still the jury found defendant guilty. The delays that we referenced, those were year delays, correct? How many years elapsed between the date of the incident and the first identification? Two and a half years, three years, Your Honor? Yes, and we do have the eyewitnesses both testifying that they were scared. And that's very plausible. This was a group of people that knew the victim and this car that drove up, they knew various people in the car. So, it's understandable that they were afraid to start and that it sort of evolved where they then did give their identifications. But that should not detract from all of the factors here where they did prove to be credible. The jury found them credible and- How long was the jury out, counsel? The jury was out, Your Honor, I think for a few days, I'm not quite sure. Which arguably shows that the jury was taking their time. They were methodical, going through the identification factors before finding defendant guilty. So, Your Honors, I would point out that, again, this court can affirm the summary dismissal of defendant's petition, where arguably he did not comply with the statute procedurally, and especially where he cannot show arguable prejudice. I have one more question for you. I think it's very hard to reconcile the Burke case and the Hayes case. I think they're probably, but can you distinguish the Hayes case from this case? The Hayes case involved an alibi witness, Your Honor. So I think that the expert witness was really going to favor the defendant, because the defendant had a real competing narrative beyond misidentification. So the fact that the expert witness was not called to enhance that alibi theory was- Makes a stronger prejudice argument, basically? Yes, Your Honor, yes. I would point out that in Hayes, there was more specificity in the petition. The Hayes defendant did reference some scientific studies and- There's also pre-Lurma, the trial was pre-Lurma, which I think makes a big difference. Yes, it was, but it was more specific to defendant and not as speculative as it is here, where we just simply don't have enough in petitioner's petition to advance it to the second stage. So I would ask this court to affirm the trial court's summary dismissal. Thank you, counsel. Thank you. You got it. Counsel in this case discussed people v Burke a lot. The main thing I did want to point out, which Your Honor already did point out, was Burke was a pre-Lurma case. Lurma really changed the landscape for this type of scientific evidence. Before it even got to the merits, Burke had gotten rid of the petition on forfeiture grounds as well. That's true, and as to forfeiture, I would note that in Burke, the petition was far more sparse than the petition was in our case. In our case, Mr. Hayes, he doesn't have an affidavit from a witness, but he cites Lurma. He goes into all of the scientific factors in Lurma that are relevant to his own situation. And again, at the first stage, that is enough for an arguable basis. I would argue that people v Hayes is far more similar to this case. Hayes is post-Lurma. In Hayes- I don't know, Hayes is pre-Lurma, actually. I apologize. Well, then our case is even stronger than Lurma, than Hayes. But in Hayes, there were not affidavits, and the Hayes court did not find that to be dispositive. There are other cases that I cited in the briefs, or people will be hearing stating that pro se petitioner who is indigent doesn't need to get an expert witness at the first stage. Also in Hayes, the defendant did try to raise this issue on direct appeal, and the court signaled this is more of a post-conviction issue. So if this court doesn't accept that this is an effective assistance of appellate counsel, it is more suited for post-conviction because it does have to do with outside record evidence. I would agree that at the second stage, if you get to the second stage, you would have to provide some expert, an expert. At the second, or certainly the third stage evidentiary hearing, we would learn what the expert would have said, how he would apply the science to Mr. Reynolds' individual situation. Counsel also spoke about a competing expert. Again, there's not a competing expert for this science. If an expert came on to speak about the identifications of the two witnesses generally, that's not a competing expert to the Lerma science about that misidentifications are more likely than the average juror would expect, and the reasons why, and the reasons why that's applicable to this case. Again, it's also a trial strategy argument, which isn't appropriate for this stage, but if we're going to get into it, it's not just that counsel considered doing this and chose not to, and that was his strategy. It needs to be a sound strategy. There's no sound strategic reason in this case, where we're only talking about two eyewitnesses who had problems, to tell the juror about more problems, to tell the juror about more reasons that these witnesses' identifications were poor. We also talked about the appellate court decision. I just want to point out that the standard at the appellate court to reverse on direct appeal, is that no reasonable juror could have convicted Mr. Reynolds. And even with that standard, the appellate court decision did show certain issues, did have skepticism about these witnesses. They discussed how some bigger factors did weigh in favor of my client. Here, we have the opposite standard. It's not that no reasonable juror could have convicted, it's that it's arguable that this expert could have changed the result. Mr. Reynolds has met this low threshold here, and we would ask that this case be remanded. Thank you, counsel. Thank you. We will take the matter under advisement, but I think we're not leaving the room. Justice Navarro, I believe is- You'll say what you're going to do. Well, so we've concluded the arguments, and I'll thank counsels for their presentations and their arguments. And as Justice Smith has said, we'll take the matter under advisement. I think now we have an opportunity to speak to the students about, can I go down there or? Yeah. We want to begin by telling them that you're an alum. Right, right. So I'll go down there.